## Unit Vending Corporation, Appellant, *v.* Lacas.

Argued January 8, 1963. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Melvin L. Fuhrman,* with him *Fuhrman and Furman,* for appellant.

*Joseph Rappaport,* with him *Rappaport & Lagakos,* for appellees.

OPINION BY MR. JUSTICE EAGEN, April 16, 1963:

This is an action for an alleged breach of contract. The issue was tried below before a judge without a jury, and an award entered in the plaintiff's favor for the full amount claimed. The court en banc awarded a new trial from which order plaintiff appeals.

The plaintiff, Unit Vending Corporation (Unit), is engaged in the business of selling cigarettes through distributing cigarette machines in the City of Philadelphia. On July 7, 1959, it entered into a written contract with one Kole Soter, then the proprietor of a diner, giving Unit the exclusive right to sell cigarettes through vending machines in the diner for a continuous period of five years.

The contract provided, inter alia, (1) That the consideration paid by Unit for the right given was a loan to Soter in the amount of $1000 without interest; (2) That the loan was to be repaid by the application of commissions earned by Soter through the sale of the cigarettes (two cents per pack); (3) That in the event of the sale of the business, Soter agreed that the purchaser would assume his obligations under the contract in writing; (4) That upon termination of the contract by expiration or otherwise, Soter would immediately repay the balance of the loan then remaining unpaid; (5) That Unit reserved the right to remove the machines at any time without notice; (6) That whenever a breach occurred or whenever in the opinion of Unit a breach appeared imminent, it could immediately terminate the contract and collect not only the balance due upon the loan, but in addition damages in an

amount equal to the average monthly profits multiplied by the total number of months remaining under the contract; (7) That Soter authorized an attorney to appear and confess judgment for any amount due under the contract, with costs of suit and fifteen per cent added for collection fees. As additional security, Soter executed a judgment note payable on demand in the amount of $1000. No reference was made therein to the contract.

Soter died on January 16, 1960. He left a solvent estate sufficiently adequate to pay any existing claims or debts. As of the date of his death, the balance due Unit on the loan was $476.36.

In his will, Soter directed the executors of his estate to maintain the diner business and the real estate until such time as his sons would come to America from Albania to take over the business. Since, under existing circumstances, this appeared highly improbable, the Orphans' Court of Philadelphia County directed that the business and diner be sold at public auction. This was effected in June, 1960.

During the period between the death and the sale, the executors of the estate leased the diner on a temporary basis to one George Stevens. The latter was agreeable to permit Unit to continue selling cigarettes through its machines in the diner provided the commissions earned were paid directly to him. He refused to assume the obligation of paying the balance of Soter's loan and insisted that Unit look to the estate for payment. This Unit refused to do and, concluding that a breach of the contract had occurred, instituted this suit against Soter's estate. It demanded damages in an amount equal to the average monthly profit earned in the diner from the sale of cigarettes, multiplied by fifty-one months, the period remaining under the life term of the contract, plus the balance due on the loan.

Was there a breach of the contract?

Appellant maintains that the contract survived the death of Soter and continued beyond for the balance of the five year period. It is the general rule that contracts made during a decedent's lifetime are not dissolved by the death of the obligor unless they involve peculiar skills or are based on distinctly personal considerations: *Stormer Estate,* 385 Pa. 382, 123 A. 2d 627 (1956). However, this rule is subject in the first instance to a construction of the contract itself and the determination from its terms as to what was the intention of the parties. There is nothing in the contract involved saying what should happen in the event of the death of Soter. In this respect, it was at least ambiguous and its meaning doubtful. It is significant that it failed to provide for performance by the heirs and representatives of his estate.

The contract was admittedly prepared for Unit by one of legal training and consisted of a printed form readily available for everyday use. It is fundamental that where the language of a written document is ambiguous or its meaning doubtful, that in determining the intention of the parties, the writing must be construed most strongly against the party drafting it and the interpretation which makes a rational and probable agreement must be preferred: *Wilkes-Barre Township School Dist. v. Corgan,* 403 Pa. 383, 170 A. 2d 97 (1961) ; *Heidt v. Aughenbaugh Coal Co.,* 406 Pa. 188, 176 A. 2d 400 (1962). The intention of the parties is paramount and in construing such a contract, the court will adopt the interpretation, which under all of the circumstances of the case, ascribes the most reasonable, probable and natural conduct of the parties, bearing in mind the objects manifestly to be accomplished: *Wiegand v. Wiegand,* 349 Pa. 517, 37 A. 2d 492 (1944) ; *Brookbank v. Benedum-Trees Oil Co.,* 389 Pa. 151, 131 A. 2d 103 (1957). In this case, we do not believe that

Soter or Unit intended that Soter's estate would be bound to carry out this contract for the extended period involved therein. Rather, a reasonable interpretation absent specific language to the contrary, leads us to the conclusion that it was not intended that the contract extend beyond the death of Soter.

Therefore, we agree with the conclusion of the court en banc below that a breach of the contract did not occur and that it ended with Soter's death. While it provided for a five year term, this must be considered in light of the entire contract and its apparent deficiencies. The contract failed to stipulate what damages were to be collectible in the event of Soter's death or that Soter or his legal successor was obliged to remain in business for the full term. There was also no provision as to the status of the contract in the event Soter discontinued the business without selling it. It is quite apparent that this was a one-sided contract and we will not add other burdensome terms thereto. We concur in the conclusion that it is ridiculous to conclude that the parties contemplated that the business would be carried on after Soter's death for the balance of the term or, failing that, the estate would be liable in the quantity and character of damages claimed.

In view of the above, the other issues raised by counsel on appeal need not be discussed and render it readily clear that the order directing a retrial was correct.

Order affirmed.